IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO



FILED BY CLERK

NOV 30 2005

COURT OF APPEALS
DIVISION TWO

| | | |
|---|---|---|
| WILLIAM M. WILSON, a married man in his sole and separate right, | ) ) ) | 2 CA-CV 2005-0072 DEPARTMENT A |
| Plaintiff/Appellant, | ) ) | O P I N I O N |
| v. | ) ) | |
| PLAYA DE SERRANO, an Arizona non-profit corporation authorized to and doing its business in Pima County, Arizona, | ) ) ) ) ) | |
| Defendant/Appellee. | ) ) ) | |

APPEAL FROM THE SUPERIOR COURT OF PIMA COUNTY

Cause No. C20042880

Honorable Jane L. Eikleberry, Judge

REVERSED AND REMANDED

Weeks & Laird, PLLC
  By Stephen M. Weeks                                            Tucson
                                      Attorneys for Plaintiff/Appellant

Law Offices of Tanis A. Duncan
  By Tanis A. Duncan                                           Tucson
                                      Attorney for Defendant/Appellee

H O W A R D, Presiding Judge.

¶1        Appellant William Wilson challenges the trial court's grant of summary judgment to his homeowners' association, appellee Playa de Serrano, in his declaratory judgment action. He claims the trial court erred in finding that Playa de Serrano's bylaws amendment was sufficient to impose a requirement that his townhouse be occupied by a person fifty-five years of age or older. Because we find Playa de Serrano lacked the contractual right to impose this restriction on Wilson's townhouse, we reverse the judgment.

¶2        When reviewing a grant of summary judgment, we view the evidence and reasonable inferences from it in the light most favorable to the nonmoving party. *Link v. Pima County*, 193 Ariz. 336, ¶ 12, 972 P.2d 669, 673 (App. 1998). The Playa de Serrano subdivision was established in 1969. Its declaration of covenants, conditions, and restrictions (the Declaration) provides that each purchaser will receive a deed to an individual townhouse and that an association will own and control the common areas. It also states that it shall be "known as Playa de Serrano, an adult townhouse development." At best, therefore, minors were not permitted to live in Playa de Serrano until Congress enacted the Federal Fair Housing Amendments Act of 1988 (FHAA).[1] Pub. L. No. 100-430, 102 Stat. 1619 (codified as amended at 42 U.S.C. §§ 3601 through 3631). The FHAA prohibited discrimination based on familial status unless the community fell within one of three exemptions. Pub. L. No. 100-430, § 6(b), 102 Stat. 1619, 1622. One such exemption allowed familial discrimination by communities that provided "housing for older persons" if each lot in the community was intended to be occupied by at least one person over the age

[1]Arizona's Fair Housing Act is similar to the federal act. Neither party makes any separate argument concerning it. *See* A.R.S. §§ 41-1491 through 41-1491.35.

of fifty-five. Pub. L. No. 100-430, § 6(d)(2), 102 Stat. 1619, 1623. A community qualified as "housing for older persons" if it had "significant facilities" designed to meet older persons' needs, at least eighty percent of its lots were occupied by someone fifty-five or older, and the community published and adhered to policies and procedures demonstrating its intent to be an over fifty-five community. *Id*.

¶3 Five years after Congress passed the FHAA, Wilson and his mother purchased a townhouse in Playa de Serrano. She subsequently transferred her interest to him. In 1995, Congress amended the FHAA by enacting the Housing for Older Persons Act (HOPA). Pub. L. No. 104-76, 109 Stat. 787 (codified as amended at 42 U.S.C. § 3607(b)(2)(C)). HOPA eliminated the "significant facilities requirement" from the FHAA, thereby making it easier for Playa de Serrano to meet the requirements necessary to fit within an FHAA exemption. *Id*.

¶4 In 2002, Playa de Serrano's owners attempted to comply with HOPA by passing an amendment to its bylaws by a vote of twenty-five to six. The amended bylaws declared that Playa de Serrano was intended to be an age-restricted community, imposed that restriction, and provided means for its Board to verify that the restriction was being met. Playa de Serrano displayed a sign stating it was an age-restricted community, informed real estate salespersons of the age restriction, and interviewed prospective purchasers to verify their age. After a complaint was filed against Playa de Serrano, the Department of Housing and Urban Development (HUD) investigated and determined that the restrictions complied with HOPA.

**¶5**  Wilson sued Playa de Serrano in 2004 seeking both a declaratory judgment that the restriction was invalid and injunctive relief. Wilson then moved for summary judgment, and Playa de Serrano filed a cross-motion for summary judgment. The trial court found that Playa de Serrano complied with HOPA and, therefore, that the restriction was valid. The court accordingly denied Wilson's motion and granted Playa de Serrano's cross-motion.

**¶6**  Wilson argues the trial court erred by granting summary judgment against him, claiming Playa de Serrano's 2002 attempt to form a legal age-restricted community was inadequate. He asserts that, although the Declaration states that Playa de Serrano is "an adult" community, it does not purport to restrict occupancy to persons at least fifty-five years of age. Thus, he reasons, the 2002 amended bylaws were insufficient to create an enforceable deed restriction limiting the age of the community's occupants to fifty-five and older. We review de novo the propriety of summary judgment.[2] *Link*, 193 Ariz. 336, ¶ 12, 972 P.2d at 673. We also interpret deed restrictions de novo. *Johnson v. The Pointe Cmty. Ass'n, Inc.*, 205 Ariz. 485, ¶ 23, 73 P.3d 616, 621 (App. 2003).

**¶7**  Deed restrictions constitute "'a contract between the subdivision's property owners as a whole and the individual lot owners.'" *Horton v. Mitchell*, 200 Ariz. 523, ¶ 8, 29 P.3d 870, 872 (App. 2001), *quoting Ariz. Biltmore Estates Ass'n v. Tezak*, 177 Ariz.

---

[2]The copy of the Declaration in the record does not contain a proper signature and notary's acknowledgment. *See* A.R.S. § 33-416. Additionally, the parties have not provided this court documents connecting Playa de Serrano Townhouses, Inc., which adopted the restated bylaws, to real property. We do not determine whether the Declaration or the bylaws are valid.

447, 448, 868 P.2d 1030, 1031 (App. 1993). A lot owner is bound by the deed restrictions incorporated into his or her deed. *See Johnson*, 205 Ariz. 485, ¶ 23, 73 P.3d at 620; *Hueg v. Sunburst Farms (Glendale) Mut. Water & Agric. Co.*, 122 Ariz. 284, 288, 594 P.2d 538, 542 (App. 1979). The parties did not find any Arizona authority directly deciding the issue Wilson raises. But, generally, to impose a restriction on a lot owner's use of the lot, the restriction must appear in the recorded declarations. *See Shamrock v. Wagon Wheel Park Homeowners Ass'n*, 206 Ariz. 42, ¶ 14, 75 P.3d 132, 135 (App. 2003). If the recorded declaration does not contain or at least provide for later adoption of a particular restriction or requirement, that restriction or requirement is invalid. *See id.* ¶ 15.

¶8        Playa de Serrano cites the Restatement (Third) of Property: Servitudes (2000) as authority for the proposition that it had the power to restrict the occupancy of the townhouses by amending its bylaws. But the portions of the Restatement Playa de Serrano cites are directed to the use and maintenance of common areas in common interest communities. *See* Restatement § 6.4 cmt. a. Section 6.7(3) of the Restatement, on the other hand, states that a common interest association does not have inherent authority to restrict occupancy of its lots, providing:

> Absent specific authorization in the declaration, the common-interest community does not have the power to adopt rules, other than those [designed to protect the common property], that restrict the use or occupancy of, or behavior within, individually owned lots or units.

Therefore, rather than supporting Playa de Serrano's position, the Restatement actually directly supports Wilson's. Moreover, we conclude that Restatement § 6.7(3) is consistent with *Shamrock* and other Arizona law on the subject. *See Shamrock*, 206 Ariz. 42, ¶ 15,

5

75 P.3d at 136. Consequently, absent a specific authorization in the Declaration, neither the Board nor a majority of the owners in Playa de Serrano has authority to restrict occupancy in the subdivision to persons fifty-five years of age or older.[3]

**¶9**    The Declaration does not expressly restrict occupancy to persons of fifty-five years of age or older.  Nor does it expressly grant the Board the power to impose such a restriction.  Although the language of the Declaration does allocate certain powers to the association and its board, these powers are largely limited to constructing, managing, and maintaining the common areas, which we assume it owns, and enforcing the other rights and restrictions contained in the Declaration.

**¶10**    Nevertheless, Playa de Serrano argues that, because the 1969 Declaration gave the association the power to adopt "rules and regulations governing the properties in accordance with the bylaws," it had authority to implement the occupancy restriction.[4]  In the absence of extrinsic evidence, we interpret declarations containing restrictive covenants as a matter of law.  *Johnson*, 205 Ariz. 485, ¶ 23, 73 P.3d at 621.  When interpreting a declaration containing restrictive covenants, we give its words their ordinary meaning, the

---

[3]We express no opinion on the validity of the restriction if the vote had been unanimous.  *But see* Restatement (Third) of Property: Servitudes, § 6.10(3) (2000).

[4]Preliminarily, we note that the Declaration actually provides that the "*council of co-owners* shall have the right to adopt regulations in accordance with the by-laws adopted by the council for the regulation and operation of the regime."  (Emphasis added.)  But, because Wilson has not argued that any amendment to the bylaws is invalid because it was not adopted by the council of co-owners, we presume that the owners who voted on the amended bylaws are the present equivalent of the council of co-owners.  Therefore, we conclude the owners of Playa de Serrano townhouses are allowed to adopt "regulations . . . in accordance with the by-laws . . . for the regulation and operation of the regime," as the Declaration provides.

best evidence of which is the words themselves. *Duffy v. Sunburst Farms E. Mut. Water & Agric. Co.*, 124 Ariz. 413, 416, 604 P.2d 1124, 1127 (1979). Clear and unambiguous restrictive covenants are thus enforced according to their express terms. *Id*. at 416-17, 604 P.2d at 1127-28. But, when there is any ambiguity "in [the] terms of the restrictive covenant or [the] intent of the parties," we resolve it "against the restriction" and "'in favor of the free use and enjoyment of the property.'" *Id.* at 417, 604 P.2d at 1128, *quoting Grossman v. Hatley*, 21 Ariz. App. 581, 583, 522 P.2d 46, 48 (1974).

¶11        The statutes governing horizontal property regimes and condominiums provide some guidance concerning the ordinary meaning of the word "regulation" in similar contexts.[5] Under former A.R.S. § 33-561, which pertained to horizontal property regimes and was in effect at the time Playa de Serrano was formed, the council of co-owners was required to provide for the "maintenance of the common elements, . . . assessment of expenses, payment of losses, division of profits, disposition of hazard insurance proceeds and similar matters and . . . to adopt bylaws, rules and regulations." 1962 Ariz. Sess. Laws, ch. 89, § 1; repealed, 1985 Ariz. Sess. Laws, ch. 192, § 1. The delegation of authority pertained to the common elements and the housekeeping requirements of the regime. *Id*. It did not provide for a regulation concerning a restriction in the occupancy of units. *Id.*

¶12        Under current A.R.S. § 33-1242, which governs condominiums, a unit owners' association has many powers. These include adopting bylaws, rules, and budgets; hiring and firing agents; suing and being sued; making contracts and incurring liabilities; "regulat[ing]

_____

[5]The parties agree that this development is not governed by these statutes, an agreement we accept for purposes of this opinion.

the use, maintenance, repair, replacement and modification of common elements"; owning and making improvements to the common elements; receiving payments for the common elements; and imposing penalties. But, like the powers of the council of co-owners, a unit owners' association's ability to adopt these "regulations" pertains to the use of the common elements defined in A.R.S. § 33-1212. § 33-1242; *see also* former § 33-561. None of the powers relates to a fundamental change in the occupancy of the units. § 33-1242. Additionally, "bylaws" typically pertain to internal corporate governance. A.R.S. § 10-206.

¶13 Finally, the 2002 amendment to the bylaws, which included the restriction on occupancy, provides that the Board shall adopt "rules and regulations" "for the use of, and conduct in, the common areas." Consistent with the statutes discussed above, this language extends the Board's power only to matters involving the common areas and does not include the ability to restrict the occupancy of the townhouses. Finally, Playa de Serrano has not offered any evidence or authority that "regulation" would encompass such a restriction. Therefore, we conclude the term "regulation" is not a "specific authorization" to impose an occupancy restriction.

¶14 Playa de Serrano, however, further relies on the language in the Declaration referring to itself as an "adult townhouse development" to support its position that the Declaration contemplated that the development would be an age-restricted community. At the time Playa de Serrano was established, a person over the age of majority was someone at least twenty-one years of age. *See* former A.R.S. § 8-101, 1970 Ariz. Sess. Laws, ch. 205, § 2; amended by 1972 Ariz. Sess. Laws, ch. 142, § 3, and ch. 146, § 9; former A.R.S. § 1-215, 1959 Ariz. Sess. Laws, ch. 65, § 1. Thus, although the Declaration's language might

8

have been sufficient to restrict the ownership and occupancy of a townhouse to persons over the age of twenty-one, it still would have allowed persons less than fifty-five years of age to occupy the townhouses. *See id.* Therefore, the Declaration's language does not infer an intent to restrict occupancy to those over fifty-five years of age. Additionally, we note that Congress declared that covenants restricting occupancy to adults are discriminatory and illegal in 1988 when it passed the FHAA. 42 U.S.C. §§ 3601 through 3631. Accordingly, the "adult townhouse" provision does not help Playa de Serrano establish an over fifty-five community. *See Massaro v. Mainlands Section 1 & 2 Civic Ass'n*, 3 F.3d 1472, 1482 (11th Cir. 1993) (adult restriction does not establish compliance with FHAA); *Westwood Cmty. Two Ass'n v. Lewis*, 687 So. 2d 296, 298 (Fla. Dist. Ct. App. 1997) (same).

¶15    At oral argument, Playa de Serrano contended that paragraph 26 of the Declaration provided the owners the ability to restrict occupancy of the townhouse units to persons fifty-five years of age or older. But paragraph 26 merely imposes a right of first refusal in favor of the co-owners if an owner desires to sell a townhouse. That right is not tied in any way to either occupancy or an age restriction. Playa de Serrano also contended that the Declaration conveyed any powers "reasonably related" to the authority specifically granted in the Declaration to the association. It admitted, however, that no Arizona authority supports this assertion in this context. Even assuming there was support for its proposition, we conclude that the authority to restrict occupancy of the townhouse units is not reasonably related to the powers granted to the association in the Declaration, which pertain to common areas, enforcing other restrictions, and corporate governance.

**¶16** We conclude, therefore, that the Declaration does not specifically authorize either the Board or a majority of the owners to impose an occupancy restriction, as the Restatement § 6.7(3) requires. We further conclude that a general provision that the owners may adopt regulations does not constitute a specific authorization for the Board or a majority of the owners to restrict occupancy of a dwelling. We agree with the Restatement that such a fundamental restriction of the individual owners' expected property rights must be set forth in the Declaration with sufficient specificity that purchasers are on notice that the occupancy of their property could be severely restricted. *See id.* Absent such a clear statement, we will construe the Declaration "against the restriction" and "'in favor of the free use and enjoyment of the property.'" *Duffy*, 124 Ariz. at 416, 604 P.2d at 1127, *quoting Grossman*, 21 Ariz. App. at 583, 522 P.2d at 48.

**¶17** Playa de Serrano argues, however, that the "FHAA gave the Association the power to declare its intent to discriminate against families with children" and that it complied with all the requirements of the FHAA and HOPA. Based on this assertion, Playa de Serrano concludes, and the trial court found, that the restriction the Association added to its bylaws is valid.

**¶18** Playa de Serrano's argument is fatally flawed. Its compliance with HOPA merely establishes that it would not act illegally by enforcing an age restriction; such compliance does not mean, however, that it has the contractual authority or right to impose that requirement on its members in the first instance. As we have found above, it did not. Therefore, the trial court erred by concluding that compliance with HOPA validated the age restriction.

10

**¶19** The authority Playa de Serrano cites does not require a different result. It relies on *O'Buck v. Cottonwood Village Condominium Ass'n*, 750 P.2d 813 (Alaska 1988), to support its position that the Declaration gave its Board authority to adopt the occupancy regulation. The court in *O'Buck* held a board's enactment of rules that did not contravene express provisions of the association's declaration of covenants, conditions, and restrictions or rights reasonably inferred from the declaration were valid and within the scope of its authority. *Id*. at 815. But *O'Buck* is factually distinguishable from this case. First, the board in *O'Buck* had enacted regulations that governed a condominium community, which Playa de Serrano adamantly asserted at oral argument it is not. Second, the residents in *O'Buck* sought to install television antennas on their roofs, which were part of the common area of the community. *Id*. at 814. The court relied on the declaration's grant to the board of specific authority to adopt rules and regulations concerning the common areas. *Id*. at 815. The declaration further allowed the board to regulate anything affecting the exterior appearance of any unit. *Id*. Here, common area use or occupancy is not implicated by the bylaw amendment but, rather, the occupancy of the individual townhouses. And the Declaration here does not specifically grant the Board the right to control the occupancy of the townhouses.

**¶20** Because the Declaration does not provide that the subdivision shall be limited to older-person housing, the amendment to the bylaws was insufficient to impose this age restriction. Therefore, the trial court's judgment is reversed, and this matter is remanded to the trial court for entry of judgment in favor of Wilson, including awarding him reasonable

11

attorney fees.[6] Wilson is awarded attorney fees on appeal upon his compliance with Rule 21, Ariz. R. Civ. App. P., 17B A.R.S.

_____
JOSEPH W. HOWARD, Presiding Judge


CONCURRING:


_____
J. WILLIAM BRAMMER, JR., Judge


_____
PETER J. ECKERSTROM, Judge

---

[6]Because we have decided this case in Wilson's favor, we need not address his argument that the bylaws amendment constitutes an improper restraint on alienation.

12